FILED '06 FEB 21 12:46 USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KLAMATH SISKIYOU WILDLANDS     Case No. 03-3124-CO
CENTER, et al.,
                                ORDER
            Plaintiffs,

        v.

BUREAU OF LAND MANAGEMENT,
et al.,

            Defendants.

Magistrate Judge John Cooney filed Findings and Recommendation on June 6, 2005 in the above entitled case. The matter is now before the court pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b). When either party objects to any portion of a magistrate judge's Findings and Recommendation, the district court must make a de novo determination of that portion of the magistrate judge's report. See 28 U.S.C. § 636(b)(1); McDonnell Douglas Corp. v. Commodore

1 - ORDER

Business Machines, Inc., 656 F.2d 1309, 1313 (9th Cir. 1981), cert. denied, 455 U.S. 920 (1982).

Plaintiffs, defendants and defendant-intervenor timely filed objections. The court has therefore conducted a de novo review of Judge Cooney's rulings. The court adopts the Findings and Recommendation [#143] filed June 6, 2005, except as follows.

Pursuant to the stipulation of the parties, the court dismissed plaintiffs' ninth claim for relief. Defendants' pending motions to dismiss this claim are now moot.

While Judge Cooney correctly found plaintiffs' first, second and third claims mooted by the 2004 Record of Decision (ROD) removing Survey and Manage (S&M) requirements from land and resource management plans within the range of the northern spotted owl, the 2004 ROD was recently set aside, and the 2001 ROD, as amended as of March 21, 2004, reinstated. Northwest Ecosystem Alliance v. Rey, Civ. No. 04-844P (W.D. Wash. January 9, 2006). The government concedes that these claims are no longer moot. Plaintiffs' pending motion for stay pending judgment in Rey is now moot.

For their third claim, plaintiffs allege that the BLM's June 14, 2002 and December 19, 2003 decisions to modify S&M protections for the red tree vole (RTV), and the 2001 ROD authorizing the modifications, are not in accordance with the Federal Land Policy and Management Act (FLPMA) and the National

Environmental Policy Act (NEPA). 2nd Amend. Comp., ¶ 97. The court previously found that plaintiffs raised serious questions as to whether the BLM violated NEPA in modifying protections for the RTV without completing supplemental NEPA analysis. Order dated May 18, 2004 at 19.

Plaintiffs argue that (1) the 2002 and 2003 modifications constitute amendments to resource management plans which, according to FLPMA's implementing regulations, must be preceded by NEPA processes, (2) the 2000 Final Supplemental Environmental Impact Statement (FSEIS) prepared in advance of the 2001 ROD lacks analysis required by NEPA of the environmental effects of modifying RTV protections, (3) the modifications constitute substantial changes in a proposed action relevant to environmental concerns requiring supplemental NEPA analysis, and (4) the decisions to modify RTV protections are otherwise arbitrary and capricious. Defendants contend that the modifications to RTV protections constitute resource management plan maintenance decisions, not plan amendments, and the BLM adequately considered in the 2000 FSEIS the effects of the annual species review (ASR) process adopted in the 2001 ROD which resulted in the 2002 and 2003 decisions to modify RTV protections.

> A resource management plan may be changed through amendment. An amendment shall be initiated by the need to consider monitoring and evaluation findings, new data, new or revised policy, a change in circumstances

3 - ORDER

> or a proposed action that may result in a change in the
> scope of resource uses or a change in the terms,
> conditions and decisions of the approved plan. An
> amendment shall be made through an environmental
> assessment of the proposed change, or an environmental
> impact statement, if necessary . . .

43 C.F.R. § 1610.5-5.

> Resource management plans and supporting components
> shall be maintained as necessary to reflect minor
> changes in data. Such maintenance is limited to
> further refining or documenting a previously approved
> decision incorporated in the plan. Maintenance shall
> not result in expansion in the scope of resource uses
> or restrictions, or change the terms, conditions, and
> decisions of the approved plan. Maintenance is not
> considered a plan amendment and shall not require the
> formal public involvement and interagency coordination
> process . . . or the preparation of an environmental
> assessment or environmental impact statement.
> Maintenance shall be documented in plans and supporting
> records.

43 C.F.R. § 1610.5-4.

Federal agencies are required by NEPA to include in every recommendation or report on major federal actions significantly affecting the quality of the human environment a detailed environmental impact statement. 42 U.S.C. § 4332(2)(C). "'Major Federal action' includes actions with effects that may be major . . . Major reinforces but does not have a meaning independent of significantly (§ 1508.27)." 40 C.F.R. § 1508.18. Actions include revised plans. 40 C.F.R. § 1508.18(a). An agency must supplement an EIS if the agency makes substantial changes in the proposed action that are relevant to environmental concerns. 40 C.F.R. § 1502.9(c)(1).

The court agrees with defendants that the ASRs and resulting protection modifications do not amend resource management plans. The 2001 ROD added the dynamic ASR process to plans within the range of the northern spotted owl, and contemplated annual modification to the guidelines, ordinarily without supplemental NEPA processes. 2001 ROD at 6-9. The court views the modifications as revisions, based on updated information, of one of several mitigation measures adopted as part of the Northwest Forest Plan. 1994 ROD at 29. Notably, the modifications do not change the categorical structure of the S&M guidelines.

The modified protections will not result in higher probable sale quantities(PSQ) of timber than contemplated in the Medford and Roseburg District RMPs, because the BLM previously decided to adopt the RMPs based on PSQs estimated without regard to protection measures adopted in the 2001 ROD. Roseburg District PRMP/EIS 4-81; 1994 Medford District PRMP/EIS 4-99. Furthermore, the term "probable sale quantity" is used to account for uncertainty, and does not indicate a commitment to a specific level of timber harvest. Roseburg PRMP/EIS Glossary 12; Medford PRMP/EIS Glossary 12.

Defendants did not arbitrarily and capriciously modify RTV protections. Defendants followed the ASR process and the modifications are based, at least in part, on new information. 2001 ROD S&G at 11; 2001 ASR 23-25; 2003 ASR 7, 49-51. Given the

BLM's expertise in interpreting its own resource management plans, the court cannot say that the BLM's arbitrarily and capriciously decided that RTV protection modifications constitute plan maintenance, and that supplemental NEPA analysis is not required by 40 C.F.R. § 1502.9(c). See Native Ecosystems Council v. Dombeck, 304 F.3d 886, 900 (9th Cir. 2002).

For their first claim, plaintiffs contend that defendants violated FLPMA by deciding to proceed with the Cotton Snake (CS) and Cow Catcher (CC) timber sales without conducting pre-disturbance surveys for RTVs. 2nd Amend. Comp. at 26. Because the court upholds the BLM's decisions to remove the RTV from category C as defined in the 2001 ROD, pre-disturbance surveys are not required. 2001 ROD S&G at 7. Defendants did not violate FLPMA in this regard.

For their second claim, plaintiffs contend that defendants violated FLPMA by deciding to proceed with the CS and CC timber sales without protecting all RTV sites made known to defendants by members of the Northwest Ecosystem Survey Team (NEST).[1] 2nd Amend. Comp. at 27. The 2003 modification removed the RTV from

---

[1] Plaintiffs presented evidence of NEST's survey efforts in the form of declarations. Defendants moved to strike the declarations, or in the alternative have the court consider the declarations only so far as they support plaintiffs' standing. The court finds that review beyond the record is not justified for any of the reasons identified in Southwest for Biological Diversity v. United States Forest Svc., 100 F.3d 1443, 1450 (9th Cir. 1996). Consistent with defendants' alternative request, the court will not strike the documents from the record, however.

6 - ORDER

category D protection within the mesic zone of the RTV's range. To the extent defendants are required to manage all known RTV sites (see 2001 ROD S&G at 11), defendants did so insofar as they determined that they could not locate the only known RTV nest in the CC timber sale area. CC AR at 378.

The BLM found that it could not verify the qualifications of NEST surveyors or their findings, and therefore concluded that it lacked knowledge of other RTV sites. CC AR 14/38. "Known sites" include historic and current locations of a species reported by a credible source that do not require additional species verification or survey by the Agency to locate the species. 2001 ROD S&G at 76.

> Known sites can be based on any documented and credible source (such as herbaria/museum records, published documents, Agency records, species expert records, and documented public information). . . A credible source is a professional or amateur person who has academic training and/or demonstrated expertise in identification of the taxon of interest sufficient for the Agency to accept the identification as correct.

Id. While it appears the NEST team expended considerable effort, the court cannot say that the BLM improperly concluded that it could not verify the qualifications of NEST surveyors, and that evidence submitted by NEST therefore did not demonstrate the existence of "known sites."

Consistent with the Findings and Recommendation to the extent adopted herein, and pursuant to 5 U.S.C. § 706, the August 28, 2003 Cotton Snake Decision Record and Finding of No

7 - ORDER

Significant Impact is set aside. Ground disturbing activities on the Cotton Snake timber sale are enjoined until such time as the BLM completes (1) a supplemental environmental assessment with evidence and analysis of effects of the Cotton Snake timber sale on the spread of noxious weeds sufficient to determine whether to prepare an environmental impact statement or finding of no significant impact, (2) an environmental impact statement, if necessary, and (3) a Decision Record with, if necessary, a Finding of No Significant Impact. See 40 C.F.R. § 1508.9; 42 U.S.C. § 4332(2)(C).

## Conclusion

The Findings and Recommendation [#143] filed June 6, 2005 is adopted, except as otherwise provided herein; plaintiffs' motion for summary judgment [#95] is granted in part and denied in part; defendants' motion for summary judgment [#105] is granted in part and denied in part; defendants' motion to strike [#112] is denied; defendant-intervenor's motion for summary judgment [#118] is granted in part and denied in part; plaintiffs' motion for stay [#149] is denied as moot; defendants' motion to dismiss [#158] is denied as moot; defendants' motion to dismiss [#167] is denied as moot.

The August 28, 2003 Cotton Snake Decision Record and Finding of No Significant Impact is set aside. Ground disturbing activities on the Cotton Snake timber sale are enjoined until

such time as the BLM completes (1) a supplemental environmental assessment with evidence and analysis of effects of the Cotton Snake timber sale on the spread of noxious weeds sufficient to determine whether to prepare an environmental impact statement or finding of no significant impact, (2) an environmental impact statement, if necessary, and (3) a Decision Record with, if necessary, a Finding of No Significant Impact.

IT IS SO ORDERED.

DATED this 16th day of February, 2006.

Michael R. Hogan
United States District Judge